UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                          **DECISION**
                                                                                      **and**
        v.                                                                **ORDER**

PHILIP R. DELUCA,                                     **11-CR-169A(F)**
ALFRED R. LAGRECA,
FRANK A. FRACASSI,
MICHAEL A. ELIA,
LAURENCE A. ELIA,
RICHARD A. ELIA,

                                Defendants.
_____

APPEARANCES:           ERIC H. HOLDER, JR.
                                UNITED STATES ATTORNEY GENERAL
                                Attorney for the United States
                                ROBERT C. KENNEDY,
                                SHAWN T. NOUD,
                                ERIN P. PULICE, of Counsel
                                U.S. Department of Justice
                                601 D Street NW
                                Washington, DC 20535

                                LIPSITZ GREEN SCIME CAMBRIA LLP
                                Attorneys for Defendant Deluca
                                HERBERT L. GREENMAN, of Counsel
                                42 Delaware Avenue, Suite 300
                                Buffalo, New York   14202

                                HARRINGTON AND MAHONEY
                                Attorneys for Defendant LaGreca
                                JAMES P. HARRINGTON, of Counsel
                                70 Niagara Street, Third Floor
                                Buffalo, New York   14202

                                JOSEPH M. LATONA, ESQ.
                                Attorney for Defendant Fracassi
                                403 Main Street, Suite 716
                                Buffalo, New York    14203

HOGAN LOVELLS US LLP
Attorneys for Defendant Michael A. Elia
ROBERT S. BENNETT,
MICHAEL P. KELLY, of Counsel
555 Thirteenth Street, N.W.
Washington, DC 20004

JOEL L. DANIELS, ESQ
Attorney for Defendant Michael A. Elia
42 Delaware Avenue, Suite 700
Buffalo, New York 14202

CONNORS & VILARDO, LLP
Attorneys for Defendant Laurence A. Elia
VINCENT E. DOYLE , III, of Counsel
1000 Liberty Building
424 Main Street
Buffalo, New York 14202

JOHN F. SPERANZA. ESQ.
Attorney for Defendant Richard A. Elia
28 East Main Street, Suite 1800
Rochester, New York 14614

**JURISDICTION**

By order of Hon. Richard J. Arcara, filed March 23, 2012 (Doc. No. 3), this case was referred to the undersigned for all pretrial matters. It is presently before the court on Defendants Michael A. Elia, Laurence A. Elia, Richard A. Elia, and Frank A. Fracassi's motion filed April 25, 2013 (Doc. No. 49) to enforce this court's January 15, 2013 order (Doc. No. 39) directing the Government to file and serve a Bill of Particulars.

**BACKGROUND**

In the 12 Count Superseding Indictment, filed March 31, 2012 (Doc. No. 2), Defendants are charged with conspiracy to underreport taxable income based on a

scheme to provide goods and services to Defendants, in lieu of reported cash bonuses received from Defendants' employer, Sevenson Environmental Services, Inc. ("Sevenson"), during an approximately 10-year period between the later 1990's and 2007, in violation of 18 U.S.C. § 371, (Count 1). Defendants Deluca, LaGreca, Laurence Elia, Michael Elia, and Fracassi are further charged with filing false tax returns by underreporting their respective incomes in violation of 26 U.S.C. § 7206(1) for taxable years 2004 (Deluca Count 2; LaGreca Count 3), 2005 (Deluca Count 7; LaGreca Count 8; Laurence Elia Count 5; Michael Elia Count 6), and 2006 (Deluca Count 10, LaGreca Count 11, Michael Elia Count 9 and Fracassi Count 12). Defendant Fracassi is also charged in Count 4 with the aiding, procuring, preparation and filing of a materially false return based on his underreported income for 2004 in violation of 26 U.S.C. § 7206(2).

By papers filed April 11, 2012, Defendant Michael Elia moved for a Bill of Particulars pursuant to Fed.R.Crim.P. 7(f) with regard to the amount of underreported income received by Elia for 2005 (Count 6) and 2006 (Count 9), the Government's method of proof, *i.e.*, specific items, cash expenditures or net worth, the date, source, and character of the alleged unreported income received by Elia in 2005 and 2006, and details regarding unindicted co-conspirators and the manner and means of the conspiracy described in Count 1, Doc. No. 17 ("Defendant Michael Elia's Motion for a Bill of Particulars") attaching a Memorandum in Support of the Motion for a Bill of Particulars ("Defendant Michael Elia's Memorandum") (Doc. No. 17-1), and the Declaration of Michael P. Kelly (Doc. No. 17-2) ("Kelly Declaration ") attaching Exhibit 1 ("Kelly Declaration Exh. 1"). The Government opposed Defendant Michael Elia's

Motion for a Bill of Particulars on April 25, 2012 by filing United States' Response In Opposition To Defendant Michael A. Elia's Motion For A Bill of Particulars (Doc. No. 21) ("Government's Response"). On April 25, 2012, all Defendants filed a Motion For An Order Directing The Production Of Brady Material As Promptly As Possible (Doc. No. 20) ("Defendants' Motion for Brady Material"). Oral argument was conducted on both motions on May 7, 2012 (Doc. No. 27) at which time the court reserved decision to allow informal discovery to proceed expecting such would obviate the need to rule on the merits of Defendant Michael Elia's Motion for a Bill of Particulars.

A further discovery status conference and oral argument on Defendant Michael Elia's Motion for a Bill of Particulars was conducted before the undersigned on October 17, 2012 (Doc. No. 33) ("the October 17, 2012 Hearing"). Upon the conclusion of the October 17, 2012 Hearing, the Government, with Defendants' concurrence, agreed to provide to Defendants, within 30 days, a listing, including corresponding Bates numbers, of all invoices from vendors for services or products provided to Defendants Deluca, LaGreca, Fracassi, Michael Elia, and Laurence Elia which the Superseding Indictment alleges were paid for, or for which Defendants were reimbursed, by Sevenson but not reported as income paid to these Defendants ("the invoices") upon which the Government will rely at trial to prove, other than Count 1, "each allegation of the Superseding Indictment." Doc. No. 35 at 63-64. The Government further agreed to provide the identity of a document or a document listing the 23 Sevenson employees who the Government alleges as unindicted co-conspirators. Doc. No. 35 at 67-68. On January 11, 2013, Defendant Michael Elia filed a Notice of Partial Withdrawal Of Defendant Michael Elia's Motion For A Bill Of Particulars (Doc. No. 38) ("Notice of

4

Withdrawal") attaching Exhibits 1 and 2 ("Notice of Withdrawal Exh(s). ___").

Following the October 17, 2012 Hearing, the Government provided 35 boxes of informal discovery materials to Defendants including 285,000 pages of documents and an additional 798 boxes of documents available for Defendants' inspection at the Department of Justice's Anti-Trust Division's office in New York City. Notice of Withdrawal at 2-3. By letter to Michael Elia's counsel, dated December 31, 2012, Notice of Withdrawal Exh. 2 ("the Government's December 31, 2012 Letter"), the Government refused to provide the listing of Bates numbered invoices that supported Counts 6 and 9 as to Defendant Michael Elia, *id.*, at 1-2, as the Government had agreed to do at the October 17, 2012 Hearing and instead provided a chart, attached to the letter, indicating for tax years 2005 and 2006 the amounts of Defendant Michael Elia's alleged unreported income, *viz.*, $39,498 for 2005 and $27,056 for 2006, and the corresponding income tax owed. *Id.* According to the Government's December 31, 2012 Letter, the invoices which support Counts 6 and 9 alleging material amounts of unreported income as to Defendant Michael Elia for tax years 2005 and 2006 are to be found among some 4,740 documents[1] and "others" not further identified by the Government which the Government previously provided to Defendants in voluntary discovery. Notice of Withdrawal Exh. 2 at 2. On April 1, 2011, the Government informed Elia's counsel, preliminarily, that Michael Elia's unreported income for 2005 was $7,000. Kelly Declaration ¶ ¶ 3-4; Kelly Declaration Exh. 1, and that the

---

[1] This figure is derived by subtracting the Bates Numbers for the subject documents referred to in the Government's December 31, 2012 letter to Michael Elia's counsel, *i.e.*, "US020240" from "US024980". Kelley Declaration Exh. 2 at 2.

5

Government's method of proof would be specific items. *Id.*

On January 15, 2013, a status conference was conducted following which the court (1) determined that the Government had, without justification, breached the agreement it had entered into on the record at the October 23, 2012 Hearing (Doc. No. 33) intended to avoid the need for a decision on Defendant Michael Elia's pending motion for a Bill of Particulars and directed the Government to fully comply with the stipulation within 30 days, (2) granted Defendant Michael Elia's Motion for a Bill of Particulars limited to the date, source, and character of the unreported income as alleged in the Superseding Indictment, and (3) denied Defendants' Motion for *Brady* material (Doc. No. 39).

On February 14, 2013, the Government filed its Supplemental Memorandum In Support and Bill Of Particulars (Doc. No. 43) ("Government's Supplemental Memorandum" and "the Bill of Particulars") which included a "list of evidence," or "spreadsheet" as an exhibit to the Bill of Particulars ("the spreadsheet"). On April 25, 2013, Defendants Michael A. Elia, Laurence A. Elia, Richard A. Elia, and Fracassi filed a Motion To Enforce This Court's January 15, 2013 Order (Doc. No. 49) ("Defendants' motion").[2] Defendants Deluca and LaGreca moved to join in Defendants' motion by papers filed April 29 and April 30, 2013 respectively (Doc. Nos. 51 and 52) which were granted on October 4, 2013 (Doc. No. 63). On May 31, 2013, the Government filed the Government's Memorandum In Opposition To Defendants' Motion To Enforce January

---

[2] Although the title of the motion refers to Defendants' request for a Bill of Particulars, the body of the motion makes clear it also requests enforcement of the Government's agreement, as a stipulation, to provide the listing of invoices as agreed on the record of the October 23, 2013 Hearing. Defendants' motion at 8 ("Defendants ask this court for an order directing the Tax Division to . . . produce a Bill of Particulars and adhere to its stipulation").

Order (Doc. No. 56) ("Government's Response to Defendants' Motion"). On June 14, 2013, Defendants filed a Reply In Support Of Defendants' Motion To Enforce This Court's January 15, 2013 Order (Doc. No. 57) ("Defendants' Reply"). Oral argument on Defendants' motion was conducted July 25, 2013. Based on the following, Defendants' motion is GRANTED.

**DISCUSSION**

Courts recognize that a bill of particulars may be granted in a false tax return case involving, as here, alleged violations of 26 U.S.C. § 7602(1) (" § 7602(1)"). *Cf. United States v. Yaeger*, 2012 WL 5880940, at *2 (W.D.N.Y. Nov. 21, 2012) (particularization pursuant to Fed.R.Crim.P. 7(f) not granted where in a case alleging violations of § 7602(1) government provided discovery that informed defendant of the "details of the alleged unreported income by . . . income source together with the amount and year [received]." (bracketing added and citing caselaw)). *See also United States v. DeGroote,* 122 F.R.D. 131, 142-43 (W.D.N.Y. 1988) (granting particularization as to omitted income including sources, dates of receipt and manner of payments in prosecution of § 7602(1) violations and rejecting that by providing "mountains of documents" government would avoid requested particularization). While it is also true that a bill of particulars serves to avoid undue surprise and prejudice to the accused at trial, *see DeGroote*, 122 F.R.D. at 143 (citing *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (*per curiam*)), it is unnecessary to further consider whether the voluminous discovery provided by the Government in this case thus far obviates the need for Defendants' requested particulars as the court directed, on January 15, 2013,

the Government to provide particulars as to the date, character, and source of Defendant Michael Elia's unreported income alleged in Counts 6 and 9 as well as the Government's stipulation to provide a detailed listing of the invoices upon which it intended to rely at trial (Doc. No. 39). No appeal of the court's order directing the Government's compliance with the stipulation and granting Defendant Michael Elia's' Motion for a Bill of Particulars pursuant to Fed.R.Crim.P. 59(a) was taken by the Government, nor did the Government request reconsideration of the court's orders, and the Government sought to comply by filing the Bill of Particulars on February 14, 2013. Thus, it is unnecessary to further consider whether particularization is warranted in this case, to address Defendants' motion the court therefore turns to whether the Bill of Particulars, including the spreadsheet, substantially complies with the court's orders. A fair review of the Bill of Particulars and the spreadsheet establishes they do not.

Specifically, for its particularization of the date of the alleged unreported income received by those Defendants charged with a substantive tax violation, *i.e.*, § 7206(1), the Bill of Particulars states that such date, "includes, but is not limited to" the respective calendar year as alleged in the Superseding Indictment, the date when an invoice for unreported personal goods and services received by Defendants was paid by Sevenson, the date Defendants were reimbursed by Sevenson for the unreported value of such goods and services as personal income to Defendants, the date of a monetary advance by Sevenson to Defendants to cover the cost of such goods and services, and the date Sevenson paid unreported income to Defendants. Bill of Particulars at 6-7. The Government further particularized that the source of such unreported income was Sevenson. *Id.* at 7. Finally, the Bill of Particulars states that as

8

to the character of the additional unreported income which Defendants are alleged to have received, such unreported income "includes, but is not limited to payments for personal goods and services" provided to Defendants, reimbursement to Defendants and advances to Defendants by Sevenson for such goods and services not reimbursed by Defendants to Sevenson. *Id.*

However, even a cursory review of such particulars demonstrates these particulars are simply recapitulations of the allegations set forth in the Superseding Indictment in support of Count 1, the conspiracy count, and thus the Bill of Particulars provides no particularization as the date, character or amount of unreported income for each Count of the Superseding Indictment charging a § 7602(1) violation. *See* Superseding Indictment ¶ ¶ 16-18 (describing Sevenson's "Spanky bucks" bonus program); 23 (d) - (j) (alleging Defendants charged with § 7601(a) violations received unreported bonuses in the form of goods and services received by these Defendants paid for by Sevenson but not reported). It is therefore difficult, for example, to see how the Defendants are any more informed as to when the Government alleges Defendants received the unreported bonuses so that Defendants may investigate and defend as to whether Defendants received unreported income in the respective tax years alleged as to each Defendant.

The same may be said for the amount of unreported income the Superseding Indictment alleges as the basis of each § 7602(1) violation charged against Defendants as to which both the Indictment and Bill of Particulars are silent. Moreover, the Bill of Particular's reference to other undisclosed facts, *i.e.*, "[t]his includes, but is not limited to . . .," Bill of Particulars at 6, renders the Bill of Particulars functionally useless as it

leaves the scope of the Government's case against each Defendant virtually open-ended thus, and, rather than reducing the possibility of prejudicial surprise and delay at trial, substantially enlarges it to Defendants' prejudice, contrary to the very purpose of a Bill of Particulars which the court directed.

The same is true of the particularization provided regarding the character of Defendants' alleged unreported income as such particularization is likely to refer to third-party vendor invoices or payment records of Sevenson, as the Government has acknowledged, supporting that such amounts constituted unreported income to Defendants. As with the dates of when such unreported income was received by Defendants, the particularization proffered by the Bill of Particulars generally recapitulates the allegations in support of the conspiracy count of the Superseding Indictment and, as such, provides no additional notice of what facts are alleged against Defendants that they will face at trial, contrary to the court's order.

The Bill of Particulars also states that it includes by incorporation a "spreadsheet" which identifies "a list of evidence" for Defendants' information including "<u>a portion</u> [of] the unreported income charged in Counts Two [*sic*] through Twelve [*sic*]." Bill of Particulars at 7-8 (referencing Exhibit B, a copy of a redacted spreadsheet, Government's Spreadsheet B Feb. 14, 2013 ("Exhibit B") and citing *United States v. Ramirez*, 609 F.3d 495, 503 (2d Cir. 2010)). As noted, Exhibit B contains 762 items, apparently referencing outside vendor invoices for the goods and services provided to Defendants at Sevenson's expense, none of which are directly associated with any Defendant by either tax year or name. *See* Exhibit B (*passim*). Thus, as with the particularization regarding the date of receipt and character of the payments, the Bill of

Particulars leaves each Defendant to guess, at his peril, which of these numerous items constitutes evidence to support each substantive Count against him. For example, in *Yaeger*, a bill of particulars was found to be unnecessary because the Government's discovery provided "<u>details</u> of the [defendant's] alleged unreported income by client name or income source <u>together</u> <u>with</u> <u>the</u> <u>amount</u> <u>and</u> <u>year</u>." *Yaeger,* 2012 WL 5880940, at *2 (underlining added). Comparing even the informal particularization provided by the government in *Yaeger* to that proffered by Exhibit B demonstrates the spreadsheet does not provide the amount or the year of any Defendants' alleged unreported income in this case. Additionally, the need for particularization regarding the source, date and character of the unreported income for each count in this case, as the court has determined, is readily apparent from the voluminous documents which the Government has denominated as its potential sources of proof, *viz.*, 762 invoices in Exhibit B which according to the Government constitute only "a portion" of the potential relevant items presumably included in the 4,740 items the Government advised Defendants constituted the entire range of invoices the Government may rely upon at trial. Notice of Withdrawal Exh. 2 at 2. The holding in *Yaeger* by necessary implication supports that Defendants need this information to fairly defend and to avoid undue surprise at trial and potential attendant delay as a result of potential adjournments to facilitate review by defense counsel.

    Nor is there any merit in the Government's contention that Defendants' request for particularization as to the amount of unreported income seeks irrelevant information because such a request erroneously "conflate[s]" tax evasion, prohibited by 26 U.S.C. § 7201, with a charge of filing false return chargeable under § 7206(1). Government's

11

Response at 17-22 (citing caselaw). First, this contention ignores that the court's order directing such particularization is now the law of the case. Discussion, *supra*, at 8. Second, regardless of whether a tax loss is irrelevant to the materiality of the alleged false return, the Government does not dispute that the amount of unreported income is relevant to the accused taxpayer's knowledge of the tax return's alleged falsity as well as that filing the false return was with the "specific intent" to violate the law, required elements in a § 7206(1) charge, *see* Government's Response at 17 (summarizing the four elements for a § 7206(1) violation) as Defendants maintain: "It makes a huge difference to us [Defendants] whether we're defending against a claim . . . [we] didn't report $27,000 [of] income or $2 million." Government's Response at 20 (quoting Michael P. Kelly Esq. at the Status Conference of March 26, 2013 (Doc. No. 46) at 65) (bracketed material added). *See United States v. Zvi*, 168 F.3d 49, 60 (2d Cir.) (in a false tax return prosecution pursuant to § 7206(1), materiality of the matter falsely reported is, in Second Circuit, for the trial court and such fact was established as a matter of law where "tax return at issue involved the under-reporting of income by thousands of dollars."), *cert. denied*, 528 U.S. 872 (1999). As such, the court finds the Bill of Particulars, even considered along with Exhibit B, fails to provide the requisite fair notice of the charges against which Defendants are required to defend, contrary to the court's order.

Additionally, lacking as it does a "list of Bates numbers corresponding to all invoices upon which the Government will rely at trial to prove each allegation of the superseding indictment," which the Government stipulated it would provide to Defendants, Doc. No. 35 at 6, the Bill of Particulars and spreadsheet demonstrate the

Government has again failed to comply with the court's order of January 15, 2013. At the January 15, 2013 status conference, the court found the Government's agreement constituted an enforceable stipulation. *See United States v. Mayers*, 2011 WL 5320976, at *1 (E.D.N.Y. Nov. 2, 2011) (enforcing stipulation between government and defendant in federal criminal case). As with the court's order that the Government file a Bill of Particulars, no appeal from this determination was taken, nor has the Government sought reconsideration or permission to be relieved of its stipulation. Instead, the Government, without any prior consultation with the court, unilaterally refused to comply. *See* Notice of Withdrawal Exh. 2 at 1-2. Thus, no justification or excuse for non-compliance with the court's order to enforce the stipulation has been proffered by the Government, and the court can conceive of none. The court therefore directs the Government to serve the listing of Bates numbered invoices upon which it will rely at trial as to each count of the Superseding Indictment in full compliance with such stipulation.

The Government's reliance on *Ramirez*, 609 F.3d 495 to justify the use of the spreadsheet to substitute for a more detailed particularization, as directed by the court, is misplaced. First, *Ramirez* involved, unlike the instant matter, an extensive narcotics trafficking conspiracy extending over a six-year period. *Ramirez*, 609 F.3d at 497. However, in cases involving false returns based on unreported income particularization has been required as to the source, date, character and amount of reported income. *See Degroote*, 122 F.R.D. at 142-32; *cf. Yaeger*, 2012 WL 5880940, at *2. Second, without describing the exact particulars provided, the trial court's acceptance, in *Ramirez,* of the 62-page summary of evidence in lieu of a more formal bill of particulars

was affirmed because the summary "adequately and appropriately explicated the charges [defendant] faced so that he could defend against them." *Ramirez*, 609 F.3d at 503. In contrast, in the instant case alleging violations of § 7206(1), the spreadsheet, which the Bill of Particulars has incorporated, is explicitly not limited to the 762 items it contains as the bill itself states it represents "<u>only</u> . . . <u>a portion</u> [of] the unreported income" alleged, Bill of Particulars at 7 (bracketed material and underlining added). As such, the spreadsheet fails to differentiate among the 762 invoices, or other records to which it refers, according to specific Counts, *i.e.*, tax years, individual Defendants, the amount of unreported income allegedly represented by such invoices or payment records, and thus it can hardly be said to "adequately and appropriately explicate[ ] the charges [Defendants] face[ ] so that [they] [can] defend against them." *Id.* Accordingly, the spreadsheet does not avoid a finding that the Bill of Particulars, as well as the spreadsheet, are insufficient to enable Defendants to prepare for trial and prevent unfair surprise at trial. *Id.* (citing *United States of Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988)). In sum, the plethora of invoices and other documents upon which the Government may eventually rely to establish the alleged unreported income attributable to each Defendant under each Count of the Superseding Indictment and the failure of the Bill of Particulars including the Exhibit B spreadsheet to adequately differentiate by Count among such invoices, and other documents, requires Defendants' motion including compliance with the Government's stipulation to provide a list of invoices by Bates numbers upon which it intends to rely at trial, be GRANTED.

## CONCLUSION

Based on the foregoing, Defendants' motion (Doc. No. 49) is GRANTED. The Government <u>shall</u> <u>within</u> <u>30</u> <u>days</u> of this Decision and Order file an amended Bill of Particulars consistent with the foregoing. Such Amended Bill of Particulars shall state for each Defendant and related Count of the Superseding Indictment the date, source, character and the amount of unreported income relating to each Defendant and related Count. The Government shall, <u>at</u> <u>the</u> <u>same</u> <u>time</u>, also serve Defendants with a listing of invoices in conformity with the Government's agreement and stipulation to do so as stated on the record at the October 17, 2012 Hearing.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: October 7, 2013
      Buffalo, New York